**G. ERIC NIELSON (5327)**
**MARIANNE P. CARD (14953)**
*G. ERIC NIELSON & ASSOCIATES*
4790 South Holladay Boulevard
Salt Lake City, Utah 84117
Telephone: (801) 424-9088
Facsimile: (801) 438-0199
Email: ericnielson@ericnielson.com
　　　mariannecard@ericnielson.com
*Attorneys for Petitioners*

---

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

### NORTHERN DIVISION

| | |
|---|---|
| SARA PARADA, individually, and as parent/guardian acting for and on behalf of D.P., a minor child; | **COMPLAINT** |
|      Plaintiffs, | |
| vs. | Case No.: 2:21-cv-00534-CMR |
| DAVID PENNINGTON, M.D.; PENNINGTON MEDICAL CENTER PLLC dba PENNINGTON WOMEN'S CENTER; IHC HEALTH SERVICES, INC. dba UTAH VALLEY HOSPITAL; IHC HEALTH SERVICES, INC. dba INTERMOUNTAIN MEDICAL GROUP; UNITED STATES OF AMERICA; SCOTT R. JACOB, M.D.; VALLEY OBSTETRICS & GYNECOLOGY, P.C. dba VALLEY WOMEN'S HEALTH; SEAN J. HENDERSON, D.O.; BRADLEY C. BURTON, PA-C; GRANGER MEDICAL CLINIC, P.C.; and DOES I-X, | Judge: Magistrate Judge Cecilia M. Romero |
|      Defendants. | |

Plaintiffs, SARA PARADA, individually, and as the natural parent and guardian acting for

and on behalf of D.P., a minor child, by and through counsel, G. Eric Nielson and Marianne P. Card of *G. ERIC NIELSON & ASSOCIATES,* hereby complain against the above-captioned Defendants, alleging as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff, SARA PARADA, (Ms. Parada) is, and at all relevant times has been, an individual who is a resident of the State of Utah. Ms. Parada sues in her individual capacity and as the natural mother and guardian of her minor child, D.P.

2.      D.P. is, and at all relevant times has been, a resident of the State of Utah.

3.      D.P. was born on February 27, 2019. He is currently two years old.

4.      Defendant, DAVID PENNINGTON, M.D. (Dr. Pennington), is an individual who currently has residency in the State of Arizona, who at all relevant times was providing health care services in Utah County, Utah.

5.      Defendant, PENNINGTON MEDICAL CENTER PLLC dba PENNINGTON WOMEN'S CENTER (The Women's Center) is a corporation with its residency in Utah County, State of Utah, who at all relevant times was providing health care services in Utah County, Utah.

6.      Defendant, IHC HEALTH SERVICES, INC. dba UTAH VALLEY HOSPITAL ("Utah Valley Hospital"), is a corporation with its residency in Salt Lake County, State of Utah, who at all relevant times was providing health care services in Utah County, Utah.

7.      Defendant, IHC HEALTH SERVICES, INC. dba INTERMOUNTAIN MEDICAL GROUP ("IHC"), is a corporation with its residency in Salt Lake County, State of Utah, who at all relevant times was providing health care services in Utah County, Utah.

8.      Defendant, UNITED STATES OF AMERICA, at all relevant times, was providing

health care services in Utah County, Utah.

9.      Defendant, SCOTT R. JACOB, M.D. (Dr. Jacob) is an individual who has residency in the State of Utah, who at all relevant times was providing health care services in Utah County, Utah.

10.     Defendant, VALLEY OBSTETRICS & GYNECOLOGY, P.C. dba VALLEY WOMEN'S HEALTH is a corporation with its residency in Utah County, State of Utah, who at all relevant times was providing health care services in Utah County, Utah.

11.     Defendant, SEAN HENDERSON, M.D. (Dr. Henderson), is an individual who has residency in the State of Utah who at all relevant times was providing health care services in Utah County, Utah.

12.     Defendant, BRADLEY C. BURTON, PA-C (PA Burton) is an individual who has residency in the State of Utah, who at all relevant times was providing health care services in Utah County, Utah.

13.     Defendant, GRANGER MEDICAL CLINIC, P.C. (Granger Clinic), is a corporation with its residency in Utah County, State of Utah, who at all relevant times was providing health care services in Utah County, Utah.

14.     Upon information and belief, Dr. Pennington, at all relevant times, was an employee of Pennington Medical Center PLLC dba Pennington Women's Center.

15.     Upon information and belief, Dr. Jacob, at all relevant times, was an employee of Valley Obstetrics & Gynecology, P.C. dba Valley Women's Health.

16.     Upon information and belief, Dr. Henderson, at all relevant times, was an employee of Granger Medical Clinic, P.C.

17.     Upon information and belief, PA Burton, at all relevant times, was an employee of Granger Medical Clinic, P.C.

18.     BRUCE GROVER, M.D. (Dr. Grover), is an individual who has residency in the State of Utah who at all relevant times was an employee of the United States of America and was providing health care services in Utah County, Utah.

19.     Upon information and belief, Dr. Grover, at all relevant times, was an employee of Mountainlands Community Health Center, Inc.

20.     KELLY DALY-WOLFE, PA-C (PA Daly-Wolfe) is an individual who has residency in the State of Utah, who at all relevant times was an employee of the United States of America and was providing health care services in Utah County, Utah.

21.     Upon information and belief, PA Daly-Wolfe, at all relevant times, was an employee of Mountainlands Community Health Center, Inc.

22.     MOUNTAINLANDS     COMMUNITY     HEALTH     CENTER,     INC. (Mountainlands), is a corporation with its residency in Utah County, State of Utah, who at all relevant times was an employee of the United States of America and was providing health care services in Utah County, Utah.

23.     Upon information and belief, Mountainlands Community Health Center Inc.'s providers are "employees" of Defendant, UNITED STATES OF AMERICA, pursuant to 42 USC § 233(g)(1)(A) and § 233(g)(4), having received federal funding as a community health center pursuant to 42 U.S.C § 254b.

24.     Pursuant to 28 U.S.C. § 2401, on July 8, 2020, Plaintiffs filed this claim in writing with the Department of Health and Human Services (DHHS).

25.     Plaintiffs received an acknowledged receipt of the claim by DHHS on October 5, 2020.

26.     Pursuant to 28 U.S.C. § 2675(a), "[t]he failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim . . . ."

27.     DHHS did not make a final disposition of Plaintiffs' claim within six months after Plaintiffs filed this claim in writing.

28.     Accordingly, pursuant to 28 U.S.C. § 2675, Plaintiffs are permitted to file this Complaint in Federal District Court against the United States.

29.     Defendant DOES I-X are entities or individuals which are liable for the injuries and damages alleged herein. Plaintiffs are unaware of the true names and capacities of Defendants sued herein as DOES I through X, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained.

30.     At all relevant times, Defendant DOES have been residents of, or corporations registered to do business in, the State of Utah, and have rendered professional services as health care providers in the State of Utah.

31.     Each of the fictitiously named Defendants is liable in some manner, either by wrongful act, omission, and negligence or otherwise, for the occurrences alleged and the injuries alleged, in part or in whole, were legally caused by the conduct of the fictitiously named Defendants.

32.     Upon information and belief, at all material times, each of the Defendants were an

agent, ostensible agent, servant, employer, employee, joint venturer, partner and/or alter ego of one or more of each of the remaining Defendants, and were at all times acting within the purpose and scope of such agency, servitude, joint venture, alter ego, partnership or employment, and with the authority, consent, approval and/or ratification of each remaining Defendant.

33.     This Court has original jurisdiction over the claims presented in this case under 28 U.S.C. § 1331, which provides for jurisdiction over civil actions arising under the Constitution and laws of the United States.

34.     This Court has jurisdiction pursuant to 28 U.S.C. § 1346(b)(1) and supplemental jurisdiction under 28 U.S.C. § 1367.

35.     Venue is appropriate under 28 U.S.C. § 1391.

36.     In bringing this action, Plaintiff has complied with all statutory requirements regarding pre-litigation review of this matter set forth in the Utah Health Care Malpractice Act.

37.     Utah Code Ann. § 78B-3-409 prohibits ad damnum clauses in complaints for medical malpractice, but such damages are hereby affirmatively alleged to be in excess of $300,000.00.

## GENERAL STATEMENT OF NATURE OF CLAIM

38.     On October 16, 2018, 32-year-old Ms. Parada saw Defendant, Dr. Pennington, at The Women's Center.

39.     Ms. Parada was transferring care from her former OB/GYN, Dr. Broadbent, to Dr. Pennington.

40.     Ms. Parada was 17 weeks, 4 days pregnant with her fourth child, three previous Cesarean Sections, and the estimated delivery date was March 23, 2019.

41.    At the October 16, 2018, appointment, Ms. Parada presented to Dr. Pennington with right sided pain, vaginal discharge, dizziness, fatigue, a fever, dyspnea, edema, chest pain, irregular heartbeat/palpitations, nausea, vomiting, constipation, urinary frequency, and urinary incontinence.

42.    Upon examination, Dr. Pennington mistakenly noted that Ms. Parada had abdominal tenderness in her "right upper quadrant" instead of pain on her right side.

43.    Dr. Pennington ordered an ultrasound of the "right upper quadrant" to evaluate for gallstones.

44.    Dr. Pennington indicated that he would request Ms. Parada's medical records from Dr. Broadbent, which records included a prior history of treatment of kidney stones.

45.    Dr. Pennington's record made no mention that Ms. Parada's pregnancy was high risk as she had three previous children by Cesarean Section (C-Section), was morbidly obese, had a known history of kidney stones and kidney disease, and had complaints that were atypical for pregnant women.

46.    On October 18, 2018, an ultrasound was performed. The only finding was that Ms. Parada's spleen was enlarged.

47.    Dr. Pennington never ordered proper testing for evaluation of the kidneys.

48.    On October 29, 2018, Ms. Parada had an appointment with Dr. Pennington and presented with a headache; she also stated that she "feels odd."

49.    She had "various pain complaints," including continuation of her right-sided pain.

50.    Dr. Pennington ordered lab tests and recommended that Ms. Parada take Tylenol for her headache.

51.     On October 30, 2018, the lab tests showed a C-Reactive Protein of 17.2 mg (normal is <8.0).

52.     Dr. Pennington did no further investigation as to why Ms. Parada had right-side pain or why her C-Reactive Protein was so high.

53.     On November 6, 2018, Ms. Parada saw Dr. Pennington again. She was 20 weeks and 2 days pregnant.

54.     Dr. Pennington made no mention of Ms. Parada's continued right flank pain.

55.     On November 29, 2018, Ms. Parada went to Mountainlands.

56.     Ms. Parada received medical treatment from PA Daly-Wolfe.

57.     PA Daly-Wolfe was working under the supervision of Dr. Grover.

58.     Ms. Parada reported to PA Daly-Wolfe that she was about 23 weeks pregnant and having prenatal care at another clinic but had concerns about unresolved issues with a vaginal infection and pain in her right flank.

59.     PA Daly-Wolfe failed to recognize that Ms. Parada's pregnancy was high risk.

60.     PA Daly-Wolfe diagnosed Ms. Parada with "vulvovaginitis."

61.     PA Daly-Wolfe mistakenly diagnosed Ms. Parada's right flank pain as a musculoskeletal injury and told Ms. Parada to use heat/ice for inflammation and pain relief.

62.     No other investigation was performed to determine why Ms. Parada had right flank pain.

63.     At this appointment, a urinalysis showed, "Leukocytes – Large," indicating an infection.

64.     No antibiotics were prescribed; no other investigation was done as to why a large

amount of Leukocytes was present in Ms. Parada's urine.

65.     Instead of calling Dr. Pennington, who was treating Ms. Parada for her pregnancy, to inform him about Ms. Parada's urine results, PA Daly-Wolfe chose to do nothing further.

66.     On December 4, 2018, Ms. Parada saw Dr. Pennington for a "routine prenatal" visit.

67.     She was 24 weeks pregnant.

68.     Her right side continued to hurt.

69.     Dr. Pennington's medical records were almost identical to the November 6, 2018, records; he made no mention of Ms. Parada's right flank pain.

70.     Ms. Parada's right quadrant pain continued.

71.     Approximately two weeks later, on December 13, 2018, Ms. Parada was rushed to the Labor and Delivery Department at Utah Valley Hospital as the pain in her right side was excruciating.

72.     Ms. Parada was admitted to the hospital.

73.     Dr. Pennington ordered an ultrasound and CT scan.

74.     The CT scan showed a 3-4 mm obstructing kidney stone.

75.     A urinalysis was done that showed "Leuk Esterase" that was "Moderate," "Nitrate" that was "Positive," with >30 white blood cells.

76.     These results indicated infection.

77.     Ms. Parada required a right ureteral stent to decompress the kidney and clear infection behind a kidney stone.

78.     Amy L. Garner, R.N., a nurse at the hospital, contacted Dr. Henderson, at 23:02, and told him of Ms. Parada's status.

79.     She also told Dr. Henderson that the patient had two months of right-sided kidney pain, the patient's temperature, and that the patient was resting.

80.     Dr. Henderson responded that, instead of coming in and treating Ms. Parada then, he would come in the morning to evaluate the patient; he indicated that he wanted to be called sooner if the nurse was "concerned."

81.     PA Burton, Dr. Henderson's employee, also failed to come to the hospital to treat Ms. Parada.

82.     During the early morning hours of December 14, 2018, at 4:11 a.m., Ms. Parada's Oxygen saturation levels dropped into the 80s—even while on oxygen.

83.     At 12:20 a.m. on, Ms. Parada's respiratory rate was in the high 20s to 40s. (Normal is between 12-20 breaths/minute).

84.     From 12 a.m. on, Ms. Parada's heart rate remained high, climbing up to 156 beats per minute at 4 a.m. (normal is between 50-100 bpm).

85.     At 01:47 a.m. on December 14, 2018, Ms. Parada's blood pressure was 86/52.

86.     The nurses, including, but not limited to Amy L. Garner, R.N.; Vicki V. Wiesenberg, R.N.; Lindsey Shaw, R.N.; and Myrinda S. Barnes, R.N., failed to perform another blood pressure check until 05:44, which showed 91/49 with a heart rate of 146.

87.     Ms. Parada's blood pressure dropped drastically, as low as 73/37.

88.     Ms. Parada went into septic shock.

89.     Ms. Parada, 25 weeks 5 days pregnant, was critically ill.

90.     The next morning, at approximately 9 a.m. on December 14, 2018, Dr. Henderson and PA Burton saw Ms. Parada.

91.     The nurses and the hospitalist, including but not limited to Clark Bishop, M.D. ("Dr. Bishop") Myrinda S. Barnes, R.N. and Lindsey Shaw, R.N., informed Dr. Henderson and PA Burton that Ms. Parada was doing fine.

92.     Upon information and belief, Dr. Bishop, at all relevant times, was an employee of Defendant, IHC HEALTH SERVICES, INC. dba INTERMOUNTAIN MEDICAL GROUP.

93.     Contrary to the nurses' information, Dr. Henderson and PA Burton examined Ms. Parada and realized she was in septic shock.

94.     She had severe hypotension and tachycardia.

95.     Ms. Parada's condition deteriorated so significantly that perfusion to D.P.'s brain would have been affected.

96.     Dr. Henderson performed a Cystoscopy and right ureteral stent placement on Ms. Parada on December 14, 2018 at 10:31 a.m.

97.     Ms. Parada was transferred to the Neuro Shock Trauma Unit following the placement of the ureteral stent, where she was administered three vasopressor medications.

98.     On December 16, 2018, while in the hospital, Ms. Parada transferred prenatal care from Dr. Pennington to Scott R. Jacob, M.D. (Dr. Jacob), at Valley Obstetrics & Gynecology, P.C. dba Valley Women's Health.

99.     Ms. Parada remained in the Neuro Shock Trauma Unit, receiving constant care, until December 17, 2018, when she was transferred to the floor.

100.    All of the nurses involved in Ms. Parada's care were employees of IHC Health Services, Inc. dba Utah Valley Hospital.

101.    She was discharged from the hospital on December 19, 2018.

102.    After being discharged from the hospital, Ms. Parada saw Defendant, Dr. Jacob, for

prenatal care at Defendant, Valley Obstetrics & Gynecology, P.C. dba Valley Women's Health.

103.    The ureteral stent remained in Ms. Parada after discharge to continue draining the

significant infection related to the kidney stone and was removed on January 10, 2019.

104.    On February 27, 2019 in the morning hours, at 36 weeks, Ms. Parada was admitted

to Utah Valley Hospital as she had pre-labor rupture of membranes.

105.    Abnormal fetal heart rate tracings were recorded on this day, beginning around

11:00 a.m.

106.    Because of the abnormal fetal heart rate tracings, Dr. Jacob, should have moved to

expedite delivery.

107.    Instead, Dr. Jacob waited approximately eight hours, until his shift ended, and had

another doctor intervene.

108.    Dr. Jeffrey R. Thorpe performed the C-Section.

109.    Ms. Parada's baby, D.P., was born on February 27, 2019, at 6:10 p.m.

110.    Due to Defendants' negligence, D.P. has a brain injury with global developmental

delays and cerebral palsy.

## FIRST CLAIM FOR RELIEF
(Negligence – Health Care Malpractice)
*DEFENDANTS, DAVID PENNINGTON, M.D.; PENNINGTON MEDICAL CENTER PLLC dba*
*PENNINGTON WOMEN'S CENTER; and DOES I-X*

111.    Plaintiffs reallege and incorporate the preceding paragraphs as if set forth fully

herein.

112.    Defendants, individually, collectively, and through the acts and omissions of their

agents and employees accepted Ms. Parada and D.P. as patients and thereby assumed various

duties of care.

113.    At all relevant times, Defendants held themselves out as being able to provide full care and treatment for patients requiring medical care of the type that Ms. Parada and D.P. required, including, but not limited to, proper diagnostic testing; management of gestational care; and proper medical interventions.

114.    The degree of care and treatment provided by Defendants to Ms. Parada and D.P. fell below the acceptable standards of care for the types of medical care and treatment required by Ms. Parada and D.P.

115.    Specifically, Defendants breached the applicable standards of care in multiple ways, including, but not limited to:

   a.    Failing to properly form and evaluate a differential diagnosis and proper testing to determine the etiology of Ms. Parada's symptoms of right-sided pain;

   b.    Failing to properly monitor Ms. Parada and D.P.;

   c.    Failing to administer appropriate health care to Ms. Parada and D.P., thereby proximately causing additional pain, suffering, and injury;

   d.    Failing to properly evaluate, diagnose, and/or treat Ms. Parada's condition;

   e.    Failing to obtain a complete medical history of Ms. Parada;

   f.    Failing to follow proper policies, procedures, protocols, and guidelines related to Ms. Parada's care;

   g.    Failing to recognize the seriousness of Ms. Parada's condition;

   h.    Failing to ensure that proper treatment and care was given to Ms. Parada and

D.P.;

i.   Failing to timely refer Ms. Parada for heightened care, including a referral to a urologist;

j.   Failing to properly document Ms. Parada's symptoms; and

k.   Any other breach of care not listed herein that may later be discovered.

116.   As a direct, proximate, and legal result of the above-described deviations from the standard of care, and such others as discovery will reveal, Defendants' acts and omissions caused injury to Plaintiffs, including, but not limited to: Past and future medical expenses, past and future lost wages, reduced quality of life, significant and lengthy pain and suffering, loss of mobility, emotional distress, loss of enjoyment, and other special and general damages in an amount to be determined at trial.

117.   Defendants, PENNINGTON MEDICAL CENTER PLLC dba PENNINGTON WOMEN'S CENTER and DOES I-X are liable for the acts and omissions of their agents, including, David Pennington, M.D., by virtue of the legal doctrine *Respondeat Superior.*

118.   The nature and extent of Plaintiffs' injuries are severe and were a direct and proximate result of Defendants' general and medical negligence.

119.   Does I-X are individuals or entities whose names are now unknown who deviated from the standard of care with respect to Plaintiffs, Ms. Parada and D.P.

## <u>SECOND CLAIM FOR RELIEF</u>
(Negligence – Health Care Malpractice)
*DEFENDANTS, IHC HEALTH SERVICES, INC. dba UTAH VALLEY HOSPITAL, IHC HEALTH SERVICES, INC. dba INTERMOUNTAIN MEDICAL GROUP and DOES I-X*

120.   Plaintiffs reallege and incorporate the preceding paragraphs as if set forth fully herein.

121.    Defendants, individually, collectively, and through the acts and omissions of their agents and employees accepted Ms. Parada and D.P. as patients and thereby assumed various duties of care.

122.    At all relevant times, Defendants held themselves out as being able to provide full care and treatment for patients requiring medical care of the type that Ms. Parada and D.P. required, including, but not limited to, proper diagnostic testing; management of gestational care; and proper medical interventions.

123.    The degree of care and treatment provided by Defendants to Ms. Parada and D.P. fell below the acceptable standards of care for the types of medical care and treatment required by Ms. Parada and D.P. and manifested a reckless disregard for the health and safety of Ms. Parada and D.P.

124.    Specifically, Defendants breached the applicable standards of care in multiple ways, including, but not limited to:

a.    Failing to properly monitor Ms. Parada and D.P.;

b.    Failing to alert physicians of Ms. Parada's deteriorating condition;

c.    Failing to recognize Ms. Parada's symptoms of hypotension and tachycardia,;

d.    Failing to recognize that Ms. Parada was experiencing septic shock;

e.    Failing to administer appropriate health care to Ms. Parada and D.P., thereby proximately causing additional pain, suffering, and injury;

f.    Failing to properly evaluate, diagnose, and/or treat Ms. Parada's condition;

g.    Failing to follow proper policies, procedures, protocols, and guidelines related to Ms. Parada's care;

h.   Failing to recognize the seriousness of Ms. Parada's condition;

i.   Failing to ensure that proper treatment and care was given to Ms. Parada and D.P.;

j.   Failing to timely refer Ms. Parada for heightened care, including a referral to a urologist; and

k.   Any other breach of care not listed herein that may later be discovered.

125.   As a direct, proximate, and legal result of the above-described deviations from the standard of care, and such others as discovery will reveal, Defendants' acts and omissions caused injury to Plaintiffs, including, but not limited to: Past and future medical expenses, past and future lost wages, reduced quality of life, significant and lengthy pain and suffering, loss of mobility, emotional distress, loss of enjoyment, and other special and general damages in an amount to be determined at trial.

126.   Defendants' conduct and treatment of Ms. Parada and D.P. demonstrates a knowing and reckless indifference toward, and a disregard of, the rights of others so as to justify the imposition of punitive damages.

127.   Defendants, IHC HEALTH SERVICES, INC. dba UTAH VALLEY HOSPITAL, IHC HEALTH SERVICES, INC. dba INTERMOUNTAIN MEDICAL GROUP and DOES I-X are liable for the acts and omissions of their agents, including but not limited to the nurses and hospitalist(s) who provided care to Ms. Parada, Amy L. Garner, R.N.; Vicki V. Wiesenberg, R.N.; Lindsey Shaw, R.N.; Myrinda S. Barnes, R.N.; and Clark Bishop, M.D., by virtue of the legal doctrine *Respondeat Superior.*

128.   Does I-X are individuals or entities whose names are now unknown who deviated from the standard of care with respect to Plaintiffs, Ms. Parada and D.P.

**THIRD CLAIM FOR RELIEF**
(Negligence – Health Care Malpractice)
*DEFENDANTS, UNITED STATES OF AMERICA and DOES I-X*

129.   Plaintiffs reallege and incorporate the preceding paragraphs as if set forth fully herein.

130.   Defendants, individually, collectively, and through the acts and omissions of their agents and employees accepted Ms. Parada and D.P. as patients and thereby assumed various duties of care.

131.   At all relevant times, Defendants held themselves out as being able to provide full care and treatment for patients requiring medical care of the type that Ms. Parada and D.P. required, including, but not limited to, proper diagnostic testing; management of gestational care; and proper medical interventions.

132.   The degree of care and treatment provided by Defendants to Ms. Parada and D.P. fell below the acceptable standards of care for the types of medical care and treatment required by Ms. Parada and D.P.

133.   Specifically, Defendants breached the applicable standards of care in multiple ways, including, but not limited to:

    a.   Failing to properly monitor Ms. Parada and D.P.;

    b.   Failing to alert physicians of Ms. Parada's symptoms;

    c.   Failing to recognize Ms. Parada symptoms were a result of a kidney stone and/or kidney disease;

    d.   Failing to administer appropriate health care to Ms. Parada and D.P., thereby proximately causing additional pain, suffering, and injury;

e.   Failing to properly evaluate, diagnose, and/or treat Ms. Parada's condition;

f.   Failing to follow proper policies, procedures, protocols, and guidelines related to Ms. Parada's care;

g.   Failing to recognize the seriousness of Ms. Parada's condition;

h.   Failing to ensure that proper treatment and care was given to Ms. Parada and D.P.;

i.   Failing to timely refer Ms. Parada for heightened care, including a referral to a urologist; and

j.   Any other breach of care not listed herein that may later be discovered.

134.   As a direct, proximate, and legal result of the above-described deviations from the standard of care, and such others as discovery will reveal, Defendants' acts and omissions caused injury to Plaintiffs, including, but not limited to: Past and future medical expenses, past and future lost wages, reduced quality of life, significant and lengthy pain and suffering, loss of mobility, emotional distress, loss of enjoyment, and other special and general damages in an amount to be determined at trial.

135.   Defendants, UNITED STATES OF AMERICA and DOES I-X are liable for the acts and omissions of their agents, including, Mountainlands Community Health Center, Inc.; Bruce Grover, M.D.; and Kelly Daly-Wolfe, PA-C, by virtue of the legal doctrine *Respondeat Superior*.

136.   Does I-X are individuals or entities whose names are now unknown who deviated from the standard of care with respect to Plaintiffs, Ms. Parada and D.P.

**FOURTH CLAIM FOR RELIEF**
(Negligence – Health Care Malpractice)
*DEFENDANTS, SCOTT R. JACOB, M.D.; VALLEY OBSTETRICS & GYNECOLOGY, P.C. dba VALLEY WOMEN'S HEALTH and DOES I-X*

137.    Plaintiffs reallege and incorporate the preceding paragraphs as if set forth fully herein.

138.    Defendants, individually, collectively, and through the acts and omissions of their agents and employees accepted Ms. Parada and D.P. as patients and thereby assumed various duties of care.

139.    At all relevant times, Defendants held themselves out as being able to provide full care and treatment for patients requiring medical care of the type that Ms. Parada and D.P. required, including, but not limited to, proper diagnostic testing; management of gestational care; and proper medical interventions.

140.    The degree of care and treatment provided by Defendants to Ms. Parada and D.P. fell below the acceptable standards of care for the types of medical care and treatment required by Ms. Parada and D.P.

141.    Specifically, Defendants breached the applicable standards of care in multiple ways, including, but not limited to:

    a.   Failing to properly monitor Ms. Parada and D.P.;

    b.   Failing to assess fetal heart rate tracings appropriately;

    c.   Failing to properly respond to non-reassuring fetal heart rate tracings and ominous heart rate tracings;

    d.   Failing to appreciate symptoms of fetal distress;

    e.   Failing to manage fetal distress;

    f.   Failing to administer appropriate health care to Ms. Parada and D.P., thereby proximately causing additional pain, suffering, and injury;

g.   Failing to properly evaluate, diagnose, and/or treat Ms. Parada's condition;

h.   Failing to follow proper policies, procedures, protocols, and guidelines related to Ms. Parada's care;

i.   Failing to recognize the seriousness of Ms. Parada's condition;

j.   Failing to ensure that proper treatment and care was given to Ms. Parada and D.P.; and

k.   Any other breach of care not listed herein that may later be discovered.

142.   As a direct, proximate, and legal result of the above-described deviations from the standard of care, and such others as discovery will reveal, Defendants' acts and omissions caused injury to Plaintiffs, including, but not limited to: Past and future medical expenses, past and future lost wages, reduced quality of life, significant and lengthy pain and suffering, loss of mobility, emotional distress, loss of enjoyment, and other special and general damages in an amount to be determined at trial.

143.   Defendants, VALLEY OBSTETRICS & GYNECOLOGY, P.C. dba VALLEY WOMEN'S HEALTH and DOES I-X are liable for the acts and omissions of their agents, including Scott R. Jacob, M.D., by virtue of the legal doctrine *Respondeat Superior.*

144.   Does I-X are individuals or entities whose names are now unknown who deviated from the standard of care with respect to Plaintiffs, Ms. Parada and D.P.

### FIFTH CLAIM FOR RELIEF
(Negligence – Health Care Malpractice)
*DEFENDANTS, SEAN J. HENDERSON, D.O.; BRADLEY C. BURTON, PA-C; GRANGER MEDICAL CLINIC, P.C.; and DOES I-X*

145.   Plaintiffs reallege and incorporate the preceding paragraphs as if set forth fully herein.

146.    Defendants, individually, collectively, and through the acts and omissions of their agents and employees accepted Ms. Parada and D.P. as patients and thereby assumed various duties of care.

147.    At all relevant times, Defendants held themselves out as being able to provide full care and treatment for patients requiring medical care of the type that Ms. Parada and D.P. required, including, but not limited to, proper diagnostic testing; management of gestational care; and proper medical interventions.

148.    The degree of care and treatment provided by Defendants to Ms. Parada and D.P. fell below the acceptable standards of care for the types of medical care and treatment required by Ms. Parada and D.P.

149.    Specifically, Defendants breached the applicable standards of care in multiple ways, including, but not limited to:

k.    Failing to properly monitor Ms. Parada and D.P.;

l.    Failing to timely treat Ms. Parada;

m.    Failing to administer appropriate health care to Ms. Parada and D.P., thereby proximately causing additional pain, suffering, and injury;

n.    Failing to properly evaluate, diagnose, and/or treat Ms. Parada's condition;

o.    Failing to follow proper policies, procedures, protocols, and guidelines related to Ms. Parada's care;

p.    Failing to recognize the seriousness of Ms. Parada's condition;

q.    Failing to ensure that proper treatment and care was given to Ms. Parada and D.P.; and

r.   Any other breach of care not listed herein that may later be discovered.

150.   As a direct, proximate, and legal result of the above-described deviations from the standard of care, and such others as discovery will reveal, Defendants' acts and omissions caused injury to Plaintiffs, including, but not limited to: Past and future medical expenses, past and future lost wages, reduced quality of life, significant and lengthy pain and suffering, loss of mobility, emotional distress, loss of enjoyment, and other special and general damages in an amount to be determined at trial.

151.   Defendants, GRANGER MEDICAL CLINIC, P.C. and DOES I-X, are liable for the acts and omissions of their agents, including Sean J. Henderson, D.O. and Bradley C. Burton, PA-C, by virtue of the legal doctrine *Respondeat Superior.*

152.   Does I-X are individuals or entities whose names are now unknown who deviated from the standard of care with respect to Plaintiffs, Ms. Parada and D.P.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for a judgment against Defendants in an amount to be determined by the trier of fact for the following damages:

a.   For special damages in an amount to be determined at trial;

b.   For general damages in an amount to be determined at trial;

c.   For punitive damages in an amount to be determined at trial as to the IHC Health Services, Inc. defendants;

d.   For pre- and post-judgment interest on all special damages pursuant to Utah law;

e.   For costs and attorney fees to the extent allowed by law; and

f.   For such other relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED this the 8th day of September, 2021.

**G. ERIC NIELSON & ASSOCIATES**

*/S/ Marianne P. Card*
G. ERIC NIELSON
MARIANNE P. CARD
*Attorneys for Plaintiffs*