THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| SARA PARADA, individually, and as parent/guardian acting for and on behalf of D.P., a minor child,<br><br>Plaintiffs,<br><br>v.<br><br>DAVID PENNINGTON, M.D.; et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br><br>Case No. 2:21-cv-00534-TS-JCB<br><br><br>District Judge Ted Stewart<br><br>Magistrate Judge Jared C. Bennett |

District Judge Ted Stewart referred this case to Magistrate Judge Jared C. Bennett under 28 U.S.C. § 636(b)(1)(A).[1] Before the court is a motion for appointment of a guardian ad litem to represent Plaintiff D.P. filed by attorneys G. Eric Nielson and Marianne P. Card (collectively, "Petitioners").[2] The court held oral argument on the motion on October 21, 2022.[3] At the conclusion of the hearing, the court took Petitioners' motion under advisement.

After oral argument, Petitioners submitted a document entitled "Reply in Support of Petition for Appointment of Guardian ad Litem."[4] Because this reply memorandum was filed after oral argument and presented new contentions not previously briefed, the court authorized Plaintiff Sara Parada ("Ms. Parada") to file a sur-reply on behalf of herself and her minor child,

---

[1] ECF No. 45.

[2] ECF Nos. 86 (redacted motion), 88 (sealed motion).

[3] ECF No. 98.

[4] ECF Nos. 100 (redacted reply), 103 (sealed reply).

D.P. (collectively, "Plaintiffs").[5] The court reviewed that sur-reply[6] in addition to the pre-hearing filings and the arguments made at the hearing and now renders its ruling. For the reasons stated below, the court denies Petitioners' motion to appoint a guardian ad litem.

## BACKGROUND

On September 8, 2021, Plaintiffs filed a complaint alleging that Defendants were negligent in providing medical care to Ms. Parada, which not only caused harm to her but also catastrophic harm to D.P.[7] After Defendants answered, litigation began in earnest. Eventually, the parties agreed to mediation. The mediation failed to settle the case and apparently exposed rifts between Plaintiffs and Petitioners who were then serving as Plaintiffs' counsel. These rifts resulted in two motions: (1) Petitioners' motion for the appointment of a guardian ad litem to represent D.P.;[8] and (2) Ms. Parada's pro se motion to remove Petitioners as her counsel.[9] The court briefly discusses each motion.

Petitioners' motion argued that a guardian ad litem was required under Utah R. Prof. Conduct 1.14, Utah R. Civ. P. 17(b), and Utah Code Ann. § 75-1-403(4) but was bereft of any argument applying federal law. In making these state-law based arguments, Petitioners contended that although Ms. Parada and D.P. "each have their own claims for damages," those "damages arise from the same set of circumstances," and, therefore, "there are no issues related to

---

[5] ECF No. 104.

[6] ECF Nos. 110 (redacted sur-reply), 113 (sealed sur-reply).

[7] ECF No. 2.

[8] ECF Nos. 86, 88.

[9] ECF No. 90.

2

apportionment of fault or mitigation of damages that make Ms. Parada adverse to D.P."[10] Given the lack of conflict between mother and son, Petitioners stated that it was their intention "to continue representing Ms. Parada in her claims against the [D]efendants . . . and . . . continue representing D.P. with regard to his claims."[11]

However, two days after Petitioners filed their motion, Ms. Parada filed one of her own.[12] Ms. Parada's motion requested that the court remove Petitioners from representing her and D.P. for various reasons. But five days after Ms. Parada filed her pro se motion, new counsel appeared on Plaintiffs' behalf,[13] which rendered Ms. Parada's motion moot.[14]

Plaintiffs then filed a response memorandum that opposed Petitioners' motion for the appointment of a guardian ad litem.[15] Plaintiffs' response argued that the issue of whether to appoint a guardian ad litem was governed entirely by federal law (i.e., Fed. R. Civ. P. 17(c)) and that Petitioners should withdraw as counsel from this action in any capacity.[16]

---

[10] ECF No. 88 at 5. The quoted material is from Petitioners' sealed motion. However, the quoted material does not need to be sealed because it does not reveal any information that the sealing rule would protect. Therefore, the court quotes it without sealing this Memorandum Decision and Order.

[11] *Id.*

[12] ECF No. 90.

[13] ECF Nos. 93-95.

[14] ECF Nos. 98 (oral order denying Ms. Parada's motion as moot), 99 (docket text order denying Ms. Parada's motion as moot).

[15] ECF No. 97.

[16] *Id.* at 3-6.

The court held oral argument on Petitioners' motion.[17] At oral argument, the court stated that, based on its own research, it has determined that federal law applies to this action and that state law has no effect on whether to appoint a guardian ad litem. The court then addressed Fed. R. Civ. P. 17(c) and stated that a parent is an adequate representative for a minor child unless the parent is incapacitated or has a conflict of interest with the child. The court then heard argument in a sealed, ex parte portion of the hearing in which Petitioners stated their reasons for why they believed that Ms. Parada was either incapable of or conflicted from serving as her son's representative for purposes of Fed. R. Civ. P. 17(c). Plaintiffs' counsel then had the opportunity to respond, and Petitioners replied. Thereafter, the court reconvened the plenary session of the hearing with counsel who had made appearances at the hearing's commencement, all of whom stated that they had no input on the question of whether to appoint a guardian ad litem. Therefore, the court concluded the hearing.[18]

---

[17] ECF No. 98.

[18] The court convened this hearing via Zoom video teleconference. Unfortunately, the invitation from the court to the parties for the Zoom hearing contained an automatic invitation to a hearing on a rival video teleconferencing application called Teams, which was integrated into the court's scheduling system by an "upgrade" to the court's email software. Counsel for at least a couple of Defendants accessed the Teams link instead of the Zoom link and, therefore, were not present when the Zoom hearing began. At the beginning of the hearing, the court asked if any of the parties were waiting for others, and no one stated that they were waiting for anyone else. Moreover, no Defendant filed a response to the motion for the appointment of a guardian ad litem, and, therefore, the court believed that no Defendant took a position on the matter. The court then took Petitioners, Ms. Parada, and Plaintiffs' new counsel into a Zoom breakout room for an ex parte, sealed hearing so that Petitioners could discuss matters that were privileged. Because the court was in the breakout room the majority of the hearing, it did not notice the appearance in the Zoom waiting room of the attorneys for other Defendants who had been waiting in the illusory Teams meeting. When the court concluded the ex parte, sealed breakout room, it asked whether any defense counsel had any arguments to make, which they did not. Because the court did not expect any additional Defendants to attend, had not received any

Four days after the hearing, Petitioners filed a reply memorandum in support of their motion for the appointment of a guardian ad litem.[19] Therein, Petitioners present drastically different arguments than they presented in their original motion. The first difference is that Petitioners concur that federal law controls the issue of the appointment of a guardian ad litem.[20] Second, and in direct conflict with their original motion, Petitioners contend that Ms. Parada now has an irreconcilable conflict of interest with D.P. because: (1) Ms. Parada is seeking to recover for her own injuries in addition to those of her son; and (2) she is not putting her son's needs first.[21] Petitioners contend that Ms. Parada's purported conflict is adversely affecting her ability to make rational decisions in her son's financial interests.[22]

Given Petitioners' new arguments in support of their motion to appoint a guardian ad litem, the court granted Plaintiffs the opportunity to file a sur-reply memorandum.[23] Plaintiffs filed a sur-reply memorandum.[24] After considering all of this, the court renders its decision and denies Petitioners' motion to appoint a guardian ad litem.

---

written position from any Defendant, heard each defense counsel who was present decline take a position on the matter, and did not recognize the screen name of anyone who was now in the waiting room, the court concluded the hearing. After the hearing, the attorneys for Defendants who were unable to enter the Zoom hearing sent emails to the court and all counsel explaining that they had not been able to access the hearing and making their position known on the matter discussed at the hearing. The court acknowledges the absent Defendants' positions.

[19] ECF Nos. 100 (redacted reply), 103 (sealed reply).

[20] ECF No. 103 at 2.

[21] *Id*. at 3-5.

[22] *Id*. at 4.

[23] ECF No. 104.

[24] ECF Nos. 110 (redacted sur-reply), 113 (sealed sur-reply).

ANALYSIS

The court declines to appoint a guardian ad litem because Petitioners have not established either the incapacity of Ms. Parada or a disqualifying conflict of interest between her interests and D.P.'s. "It is well established that [t]he appointment of a guardian ad litem is a procedural question controlled by [Fed. R. Civ. P.] 17(c) . . . ."[25] This is because state law has no bearing on a federal court's determination of whether to appoint a guardian ad litem in a federal cause of action.[26] Fed. R. Civ. P. 17(c) provides:

> (c) Minor or Incompetent Person.
>
> > (1) With a Representative. The following representatives may sue or defend on behalf of a minor or an incompetent person:
> >
> > > (A) a general guardian;
> > > (B) a committee;
> > > (C) a conservator; or
> > > (D) a like fiduciary.
> >
> > (2) Without a Representative. A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem--or issue another appropriate order--to protect a minor or incompetent person who is unrepresented in an action.

---

[25] *Burke v. Smith*, 252 F.3d 1260, 1264 (11th Cir. 2001) (first alteration in original) (quotations and citation omitted).

[26] *Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 135-36 (3d Cir. 2002) ("A district court need not look to the state law, however, in determining what factors or procedures to use when appointing the guardian ad litem.").

A plain-language reading[27] of Rule 17(c) yields two important facets to the rule. First, "a general guardian," which can include the parent of a minor child,[28] is authorized to sue on behalf of a minor. Second, a court is legally obligated to appoint a guardian ad litem when—and only when—a minor child lacks a representative enumerated in Rule 17(c)(1).

Although Rule 17(c) obligates a court to appoint a guardian ad litem when a minor child lacks the benefit of having one of the enumerated representatives listed in Rule 17(c)(1), the rule is silent as to whether and under which circumstances a court retains discretion to appoint a guardian ad litem even when the child has a representative. In answering this question, courts take two analytical approaches, both of which arrive at the same conclusion. First, some courts reason that Rule 17(c) does not preclude them from exercising discretion to appoint a guardian ad litem in limited situations where the general guardian is (1) incapable or unwilling to represent the minor,[29] or (2) in direct conflict with the minor's interests.[30] Second, other courts reason that an unwilling, unable, or conflicted representative cannot "represent" the minor child, and, therefore, the child is "unrepresented" under Rule 17(c), which requires the court to appoint

---

[27] *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 123 (1989) ("We give the Federal Rules of Civil Procedure their plain meaning.").

[28] *See, e.g.*, *Croce v. Bromley Corp.*, 623 F.2d 1084, 1093 (5th Cir. 1980) (holding that because "the child's chief legal guardian, his mother, brought this action on his behalf . . . ., there was no need for the court to appoint a guardian ad litem").

[29] *See, e.g.*, *von Bulow by Auersperg v. von Bulow*, 634 F. Supp. 1284, 1292 (S.D.N.Y. 1986) (stating that Rule 17(c) gives the court the discretion "to authorize someone other than [the representative] to sue on behalf of an incompetent where the [representative] is unable or refuses to act *or* its interests conflict with those of the incompetent" (emphasis in original)).

[30] *See, e.g.*, *id.*; *see also, e.g.*, *Gardner by Gardner v. Parson*, 874 F.2d 131, 138-39 (3d Cir. 1989) (holding that Rule 17(c) empowers a court with discretion to appoint a guardian ad litem where the interests of the incompetent and the general representative conflict).

a guardian ad litem.[31] Whether phrased in terms of the court's discretion or as a requirement of Rule 17(c), it appears that a court should appoint a guardian ad litem for a minor if: (1) the parent is unable or uninterested in representing the minor child in litigation; or (2) the parent's and child's interests are in direct conflict. As shown below, neither is the case here.

I. **Ms. Parada's Is Both Interested and Able to Represent D.P.'s Interests.**

Ms. Parada is both interested in and capable of representing D.P.'s interests in this litigation. The court addresses each requirement separately below.

A. <u>Ms. Parada is interested in representing D.P.'s interests in this litigation</u>.

Instead of being an empty chair in this litigation, Ms. Parada has been very involved. Courts have found that a representative who does not press a known claim on behalf of a minor or incapacitated person is disinterested in pursuing the claim, which warrants the appointment of a guardian ad litem.[32] "Disinterested" is not an adjective that can be applied to Ms. Parada here. In fact, Ms. Parada has been so involved that she and Petitioners disagreed regarding the direction that this action should be litigated to the point where Ms. Parada sought a new attorney for her and D.P. This is not the action of an unwilling representative.

---

[31] *See, e.g.*, *Noe v. True*, 507 F.2d 9, 11-12 (6th Cir. 1974) ("Moreover, since the respective legal positions of the child and guardian are adverse in this lawsuit, it cannot be said that the plaintiff is 'otherwise represented' in the action as provided in Rule 17(c).").

[32] *Roberts v. Ohio Cas. Ins. Co.*, 256 F.2d 35, 39 (5th Cir. 1958) (finding that parent who did not press a defense on minor's behalf when it became known after judgment required appointment of a guardian ad litem under prior version of Rule 17); *von Bulow*, 634 F. Supp. at 1294 (appointing guardian (i.e., "next friend") where committee appointed under state law to represent incapacitated person declined to pursue the action on the incapacitated person's behalf).

B. <u>Ms. Parada is also a capable representative of D.P.'s interests</u>.

Ms. Parada is competent to represent D.P.'s interests. Although federal law governs the appointment of a guardian ad litem, courts look to state law to determine questions of competency regarding the abilities of a guardian.[33] Under Utah law, an adult is incapacitated if he/she cannot make "responsible decisions concerning his[/her] person."[34] The Utah Supreme Court states that an adult is incompetent to make decisions where the adult's "decision-making process is so impaired that he[/she] is unable to care for his[/her] personal safety or unable to attend to and provide for such necessities as food, shelter, clothing, and medical care, without which physical injury or illness may occur."[35] The Utah Supreme Court has recognized that to make this determination, "examining the decision-making process of an alleged" incapacitated person is necessary.[36] This inquiry considers whether there are

> physical or mental defects which interfere with the rational functioning of the mind. If the mind functions rationally but the individual acts in a way commonly designated as eccentric—that is, his[/her] acts deviate from the usual principally because he[/she] is less susceptible to public opinion than are many of us—he[/she] is not incompetent . . . . He[/she] may be foolish in the eyes of many of us, but he[/she] is not incompetent.[37]

---

[33] Fed. R. Civ. P. 17(b)(3); *see also S. Ohio Sav. Bank & Tr. Co. v. Guar. Tr. Co. of N.Y.*, 27 F. Supp. 485, 486 (S.D.N.Y. 1939) (stating that an incompetent representative cannot maintain a suit in federal court and, therefore, Rule 17(b) and Rule 17(c) should be read together to require the representative's competency to be determined by the law of the state in which the action is pending).

[34] *In re Boyer*, 636 P.2d 1085, 1089 (Utah 1981) (quotation marks omitted).

[35] *Id*.

[36] *Id*.

[37] *Id*. (fourth alteration in original) (quotations and citation omitted).

The Utah Supreme Court also observed that "[c]ompetency is not measured by one's ability to accumulate and hold the material things of life. Were it so, there would be many of our ministerial brethren—not to mention some of our learned judicial associates—behind mental bars."[38]

Here, Petitioners woefully fail to show that Ms. Parada is incapable of representing D.P.'s interests for two significant reasons. First, Petitioners conceded at oral argument that there is no one else who could take better care of D.P. than Ms. Parada. That concession is by itself fatal to their claim of incompetence according to Utah law. Second, Petitioners fail to provide *any* medical evidence showing that Ms. Parada is incapable of making decisions for herself or D.P.

Despite the court asking Petitioners to cite some medical or other objective evidence to show Ms. Parada's incapacity to represent her son in this action, the themes that Petitioners repeatedly cited at oral argument and in their post-oral argument reply memorandum were: (1) Ms. Parada disagrees with Petitioners as to the risks and value of D.P.'s case; and (2) Ms. Parada obtained other counsel that is purportedly not as qualified as Petitioners to handle this type of litigation. Both reasons fall well short of establishing Ms. Parada's alleged incapacity.

For starters, if wide disparities in how one person views the risks and value of a particular case is the sign of incompetence, then, as the Utah Supreme Court noted, many lawyers who come before this court would not be allowed to represent anyone but, instead, would be "behind mental bars." Even very educated, talented, and capable attorneys differ wildly on the strengths, weaknesses, and concomitant value of their cases. Thus, disagreement on a case's value cannot,

---

[38] *Id.* (quotations and citation omitted).

without more, show the incompetence of a guardian especially where, as here, Ms. Parada's view of the case's value is grounded in at least some evidence in the record. Instead, the fact that Ms. Parada can take care of her son and is involved enough in his legal representation to disagree with counsel's handling of the case is evidence that supports her competency.

Additionally, the court has neither been provided with nor found from its own research any authority in Utah or anywhere else suggesting that competence to represent a minor in litigation is measured by the quality of counsel that the representative hires and fires. But even if such a measuring stick of representative competence were to exist, it certainly could not be justly meted out by the very counsel who are competing for the clients' business. Competing counsel would naturally hold a self-serving, inflated, and overly generous assessment of their own abilities and an unduly harsh view of opposing counsel. A representative's competence has never, will never, and should never come down to a metaphorical beauty contest between competing counsel where each attorney serves as an irreparably biased judge.[39] Such a standard would be absurd, which is precisely why the court refuses to countenance Petitioners' argument along those lines here. Instead, the court applies the standards for competence under Utah law and finds that Ms. Parada passes them all with flying colors.

## II. Petitioners Cannot Show That Ms. Parada's Interests Are in Conflict with D.P.'s.

Petitioners' arguments regarding Ms. Parada's alleged conflict with D.P.'s interests are as unpersuasive as their arguments regarding her competence. Similar to their arguments with Ms. Parada's competence, Petitioners' own words come back to haunt them. In their motion seeking

---

[39] By using the phrase "beauty contest," the court is using a rhetorical device and is neither attempting nor intending to inject any sense of misogynistic thought consciously or subconsciously into this Memorandum Decision and Order.

the appointment of a guardian ad litem, Petitioners stated, "there are no issues related to apportionment of fault or mitigation of damages that make Ms. Parada adverse to D.P."[40] However, in their post-oral argument reply memorandum, Petitioners now contend that Ms. Parada has an irreconcilable conflict with D.P.[41] However, Petitioners fail to provide *any* explanation as to what changed to create conflict between the filing of the initial motion in which there was no conflict and the reply memorandum that now claims irreconcilable conflict.

To solve this mystery, the court reviewed the evidence that Petitioners marshaled in support of finding a conflict. With one exception, the evidence Petitioners cite in support of a conflict existed *before* they filed their motion stating that there was no conflict between Ms. Parada and D.P. For example, Petitioners point out that when a parent and a minor child both have damage claims arising from the same incident, the court should appoint a guardian ad litem because the parent and child are necessarily in conflict.[42] In support of this contention, Petitioners cite *Hoffert v. General Motors Corp.*[43] There are several problems with this argument. First, it is in direct conflict with Petitioners' representation in their initial motion that said there was no conflict between mother and son arising out of the same alleged negligent act. Second, if a conflict were to exist here, then this purported conflict existed from the filing of the case. That would mean that Petitioners have been jointly representing Ms. Parada and D.P. even though there was a conflict of interest that was never waived. And even if not known at the outset of

---

[40] ECF No. 88 at 5.

[41] ECF No. 103 at 3-5.

[42] *Id.* at 3.

[43] 656 F.2d 161 (5th Cir. 1981).

litigation, this purported conflict clearly became known before Petitioners' motion to appoint a guardian ad litem in which they express an unconflicted ability to continue representing Ms. Parada *and* D.P.. Whether from the outset of the case or shortly before Petitioners' motion was filed, if *Hoffert* is the law, then Petitioners' representation of Ms. Parada and D.P. in the face of such an unwaived conflict would amount to a violation of the Utah Rules of Professional Conduct.[44]

However, the court will not assume that Petitioners behaved unethically from the outset of this litigation or by filing the instant motion—even though that would necessarily be the conclusion based on the argument in Petitioners' reply memorandum. The reason the court will not infer an unethical conflict is because *Hoffert* provides precious little analysis to help the court know when a conflict exists between parent and child arising out of the same alleged negligent act. The *Hoffert* court speaks of the district court's decision approvingly without explaining why it was necessary under the facts of that case.[45] Such scant analysis provides no rule for the court to analyze and, luckily for Petitioners, means that the court must take Petitioners at their word in their initial motion, which was there was no conflict between Ms. Parada and D.P.'s interests even though their alleged injuries stem from the same purportedly negligent episode.

The lone piece of evidence that came into existence between the filing of Petitioners' initial motion for a guardian ad litem and their reply memorandum does not demonstrate a conflict. Petitioners claim that Ms. Parada's decision to terminate Petitioners' representation and to find another lawyer supports a finding of a conflict between Ms. Parada's and D.P.'s interests.

---

[44] Utah R. Pro. Conduct 1.7.
[45] 656 F.2d at 162, 164.

But, as stated above, Petitioners fail to cite any authority—and the court cannot find any on its own—showing that a parent-representative's decision to hire one attorney over another creates a disqualifying conflict between her and her child. The court can only assume that no authority exists for such a proposition because it makes no sense for the reasons stated previously. Therefore, even though Petitioners have spoken out of both sides of their mouth on this issue—and even if the court considers all the words coming out of either side of Petitioners' mouth—the court cannot find a disqualifiable conflict between Ms. Parada and D.P. that militates in favor of appointing a guardian ad litem.

## CONCLUSION AND ORDER

For the reasons stated above, Petitioners' motion to appoint a guardian ad litem[46] is DENIED. Petitioners' representation in this action is now terminated.

IT IS SO ORDERED.

DATED this 10th day of November 2022.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[46] ECF No. 86.